UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EMILIO ANTONIO GARCIA,

      Petitioner,

    -v-                12-CV-970-JTC

JANET NAPOLITANO, Secretary of DHS;
MICHAEL PHILIPS, District Director;
and
TODD TRYON, Field Office Director,
Immigration and Customs Enforcement,

      Respondents.

---

## **INTRODUCTION**

Petitioner Emilio Antonio Garcia, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered October 16, 2012 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition, and petitioner has submitted a reply (Items 6-8). For the reasons that follow, the petition is denied.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of El Salvador. According to DHS records submitted as Exhibit A to the Declaration of Deportation Officer Juanita Payan (Item 4-1), petitioner arrived in the United States at an unknown place and on an unknown date, without being admitted or inspected by an Immigration Officer. *See* Item 4-2, pp. 2, 15.

On May 4, 1988, petitioner filed an Application for Temporary Residence under Section 245A of the Immigration Reform and Control Act of 1986 ("IRCA"). The application was denied on February 23, 1990. *Id.* at 6.

DHS records reflect that petitioner was convicted of several different state law violations on multiple occasions between October 1989 and March 2008, including:

- October 24, 1989 – Driving While Ability Impaired, in violation of New York Vehicle and Traffic Law § 1192(1);

- April 27, 1999 – Issuing a Bad Check, in violation of New York Penal Law § 190.05 (2 counts);

- February 5, 2004 – Petit Larceny, in violation of New York Penal Law § 155.25;

- March 5, 2007 – Petit Larceny, in violation of New York Penal Law § 155.25;

- May 2, 2007 – Criminal Possession of a Controlled Substance in the 7th Degree, to wit: cocaine, in violation of New York Penal Law § 220.03;

- August 21, 2007 – Aggravated Unlicensed Operation of a Motor Vehicle in the 3rd Degree, in violation of New York Vehicle and Traffic Law § 511(1);

- March 19, 2008 – Attempted Assault in the 2nd Degree, in violation of New York Penal Law §§ 110, 120.05(2).

*Id.* at 6-7, 12, 15.

On February 14, 2008, DHS issued a Notice to Appear ("NTA") directing petitioner to appear for removal proceedings before an Immigration Judge, at a time and place to be determined. *Id.* at 14. The NTA charged petitioner with being subject to removal from the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled; pursuant to INA § 212(a)(2)(A)(i)(I), as an alien who has been convicted of a crime involving moral turpitude; and pursuant to INA § 212(a)(2)(A)(i)(II), as an alien convicted of a controlled substance offense. *Id.* at 15-17.

On June 8, 2010, petitioner was arrested at his residence by DHS officers, served with the previously issued NTA, and placed in DHS custody pending completion of immigration removal proceedings. *Id.* at 18. An additional charge was issued on September 14, 2010, which added a factual allegation to the NTA relating to petitioner's March 19, 2008 conviction on a plea of guilty to the offense of Attempted Assault in the 2nd Degree. *Id.* at 12-13.

On February 3, 2011, Immigration Judge Steven J. Connelly ordered petitioner removed from the United States to El Salvador. *Id.* at 10. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), and the order of removal became final on May 9, 2011, when the BIA dismissed the appeal. *Id.* at 7, 9.

On May 16, 2011, DHS sent a presentation packet to the Consulate General of El Salvador ("Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. *Id.* at 18. According to DHS records, petitioner was interviewed by a Consulate representative by telephone on May 26, 2011, and DHS contacted the Consulate on several occasions between June 9, 2011 and June 22, 2011, regarding the status of petitioner's travel document. *See* Item 4-1, ¶¶ 15, 17.

On June 21, 2011, petitioner filed a petition with the United States Court of Appeals for the Second Circuit seeking review of the BIA's May 9, 2011 order, along with a motion for stay of removal. Item 4-2, pp. 19-21. As of this writing, the petition remains pending before the circuit court. *Id.*[2]

On August 1, 2011, DHS issued a Decision to Continue Detention notifying petitioner that, based upon the information in his file – including his extensive criminal history – DHS determined that petitioner would be a threat to the community and a flight risk if he were to be released from custody. *Id.* at 7. Further reviews of petitioner's custody status were conducted by DHS Headquarters Custody Management Unit ("HQCMU") in November 2011, March 2012, July 2012, and October 2012. Following each review, petitioner was notified that DHS determined to continue his detention in DHS custody. *Id.*

---

[2]On November 29, 2012, in accordance with Second Circuit procedures for review of immigration petitions, the circuit court issued a "90-Day Tolling Order" suspending proceedings in petitioner's appeal for ninety days "so that Petitioner and the Government may determine whether remand to the [BIA] is appropriate." Item 4-2, p. 22; *see In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160 (2d Cir. 2012). As indicated by the circuit court's docket sheet, the tolling period was cancelled by order dated February 7, 2013 (*Garcia v. Holder*, No. 11-2490, Item 35), no further stay or suspension of proceedings has been issued, and as of this writing, no further action has been taken on the petition for review of the removal order.

at 2-5. He is currently being held at the Buffalo Federal Detention Facility in Batavia, New York.

Petitioner filed this action on October 21, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since May 9, 2011, when the Immigration Judge's order of removal became final, is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA – respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's

detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens – *i.e.*, aliens ordered removed due to conviction of a crime – beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[3]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information

sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on June 8, 2010, upon execution of an arrest warrant, for detention pending completion of immigration removal proceedings as authorized by INA § 236.[4] *See* Item 4-1, ¶ 10. That detention continued until May 9, 2011, when the BIA dismissed petitioner's appeal of the Immigration Judge's order of removal. *See* 8 C.F.R. § 1241.1(a) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was pursuant to INA § 241(a), and the removal period commenced. DHS promptly commenced efforts to secure a travel document for petitioner's removal to El Salvador. Item 4-1, ¶¶ 14-17. Then, on June 21, 2011, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal pending the circuit court's ruling. *Id.* at ¶ 16.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court. *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d

---

[4]Petitioner has not challenged his pre-removal order detention under INA § 236. *See Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Ciurcuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process). Pursuant to this policy, the removal period which began on May 9, 2011, was "effectively stayed" as of June 21, 2011, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, DHS had slightly more than a month to obtain the travel documents necessary for execution of the removal order prior to the filing of the petition for circuit court review (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and cannot resume its efforts until the Second Circuit rules either on the petition itself or on the pending motion for stay of removal.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights

under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to El Salvador in the reasonably foreseeable future. He simply alleges that the Consulate "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued …." Item 1, ¶ 12. However, as discussed above,

the request for a travel document for petitioner remains pending with the Consulate, and there is nothing in the record before the court to indicate that El Salvadoran authorities are inclined to deny the request. Furthermore, DHS records reflect that prompt steps were taken upon issuance of petitioner's final removal order to secure the travel document, and regular communications between the Consulate's representatives and DHS staff continued until petitioner himself put the process into the present state of suspension by filing his petition, and motion for stay pending removal, with the Second Circuit.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to El Salvador, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 20,849 aliens were repatriated to El Salvador; in FY 2010, 20,361 aliens were repatriated to El Salvador; and in FY 2011, 17,308 aliens were repatriated to El Salvador. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the El Salvadoran government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to El Salvador.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 1, 12-

13, 16-21. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial

burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 4/1/2013
p:\pending\2012\12-970.2241.mar28.2013